CITY OF NEWARK, IN THE COUNTY OF ESSEX, AND JOHN HOWE, CITY TREASURER OF THE CITY OF NEWARK, RELATORS, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, A CORPORATION, RESPONDENT.

Submitted January term, 1931—Decided June 29, 1931.

Before Justices CASE, DALY and DONGES.

For the relators, *Frank A. Boettner* (*Spaulding Frazer* and *Louis A. Fast,* on the brief).

For the respondent, *William H. Speer.*

PER CURIAM.

On the petition of the relators an alternative writ of *mandamus* issued to compel the payment to the city treasurer of the city of Newark certain moneys deducted by the respondent for the transportation of police officers and municipal and county detectives, as authorized by chapter 324 of the Laws of 1929 (a supplement to the "Act concerning public utilities"), from the five per centum of the respondent's gross receipts payable under the act entitled "An act concerning auto buses, commonly called jitneys, and their operation in cities," approved March 17th, 1916, and the acts supple-

mental thereto and amendatory thereof. There was a demurrer and a joinder thereon. The single point presented for our consideration is the contention of the relators that chapter 324 of the Laws of 1929, under which respondent claims its right to the deduction, is unconstitutional.

The first argument advanced is that the legislation is unconstitutional because its object is not expressed in its title. We consider that this point is answered by the decision of the Court of Errors and Appeals in *State* v. *Sutton*, 87 *N. J. L.* 192. The court there had under review an earlier form (*Pamph. L.* 1912, *ch.* 159) of the precise statute now before us. The 1912 act provided that each street railway company or corporation referred to in the Public Utilities act should "grant free transportation of uniformed public officers while engaged in the performance of their public duties, or police officers of whatever grade or rank acting as detectives, county detectives or detectives attached to or connected with the office of the prosecutor of the pleas in any county in this state while engaged in the performance of their public duties, whose duties require police duty to be performed without uniform." The 1929 act is in essence the same except that the word "free" is struck out and there is added a provision that for such transportation an amount equal to the lawful fare shall be considered a credit on account of any franchise tax, or charges in the nature thereof, payable or apportioned by law or ordinance to any municipality wherein such transportation takes place. The title to the 1912 statute was precisely the same as the title to the 1929 statute, to wit: "A supplement to an act entitled 'An act concerning public utilities; to create a board of public utility commissioners and to prescribe its duties and powers,' approved April 21st, 1911." The Court of Errors and Appeals in the Sutton case sustained the 1912 legislation upon the ground that it was a constitutional exercise by the legislature of its police power, inasmuch as the result of the statute was to induce the presence of police upon street railway cars and the police protection thus procured was within the object expressed in the language of the statute; and this, too, even if compliance

with the statute meant the exacting of tribute from the carrying companies. The 1912 statute placed the expense of the transportation of the police officers upon the carrying companies; we are assuming, since that is the relators' contention, that the 1929 legislation places it upon the municipality. That is a distinction that we conceive to be without a difference with respect to the completeness of the title. So far as the relation between the title and body of the legislation is concerned, we consider that the 1929 legislation stands on the same footing as that of the 1912 legislation. Since the latter has been declared constitutional *in toto* and since the greater includes the less, we must assume that the constitutional requirements are met in its title as well as in the other features of the statute. We conclude that the legislation under review is sound against this attack.

The second point is that the 1929 act is unconstitutional as violative of article 4, section 7, paragraph 12, of the state constitution; in other words, that the effect of the act is to levy upon a municipality an arbitrary and undefined contribution for the benefit of counties and other municipalities. Again we assume the accuracy of relators' assertion that the method of compensation to the utility provided by the statute is a levy against the municipality. It is to be borne in mind that the essence of the legislation has been held to be the furnishing of police protection. As was said in the Sutton case: "The transportation of the officer is a subordinate incident to the police regulation, and of the power of the legislature to enact such a regulation there would seem to be neither room for doubt nor ground for denial." It is difficult to distinguish, in point of constitutionality, between a statute that provides police protection within a municipality at the expense of a utility and one that provides police protection within a municipality at the expense of the municipality; that is to say, it is difficult to understand how the former could be constitutional, and the latter, under the argument advanced by the relators, unconstitutional. A municipality is under the obligation to provide, or, at any rate, is well within its constitutional and statutory authority in providing,

police protection within its boundaries. The relators raise the objection that the police officers carried, under the 1929 statute, at the expense of the municipality include police officers of other municipalities and of county governments; but so did the 1912 statute which has been sustained not only in the Supreme Court and in the Court of Errors and Appeals, but also in the United States Supreme Court. And if the carrying of such officials affords police protection to the municipality what is the impropriety, constitutional or otherwise, in the payment therefore from municipal funds? We fail to distinguish how the shifting of the expense of furnishing the police transportation from the utility to the municipality changes the constitutional aspect.

The third point is that the statute is unconstitutional as violative of article 1, sections 19 and 20, of the state constitution, by which provisions the municipality is prohibited from giving any money or property, or from loaning its money or credit to or in aid of any corporation and from appropriating any money to or for the use of any corporation. The municipality is not called upon to give money or property, or to loan its money or credit, or to appropriate any money to or for the use of any corporation. It is merely paying a cost item of police protection within its municipal lines. The amount withheld by the utility for the carrying of a police officer is precisely the same as it charges every passenger on its vehicles, and this rate has been fixed by the board of public utility commissioners. A full *quid pro quo*, as determined by an arm of the legislature, is given. The city in paying for fares of police officers actually transported no more contributes or gives funds to the utility than it gives money to the contractor, whether corporate or individual, who paves a street or builds a bridge. Indeed, the funds devoted to this purpose are not funds raised by the city of Newark as a part of its municipal taxes. It is a fund collected by the state and disbursed amongst the municipalities of the state in such fashion as the legislature has determined. Viewed in that light, the disbursement is not by the city. It is by the legislature and for a cause, namely, police protection, and in the

exercise of a power of the legislature, of which, as has been well said, there seems "to be neither room for doubt nor ground for denial."

The peremptory writ is denied.